# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 20-1017V**
UNPUBLISHED

| | |
|---|---|
| ANDREW FINNERAN, | Chief Special Master Corcoran |
| Petitioner, | Filed: January 28, 2026 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Lawrence R. Cohan, Saltz Mongeluzzi & Bendesky, PA, for Petitioner.*

*Mary Novakovic, U.S. Department of Justice, Washington, DC, for Respondent.*

## ENTITLEMENT DECISION[1]

On August 14, 2020, Andrew Finneran filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a left shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on November 5, 2018. Petition at 1.

For the reasons set forth below, I find Petitioner has not established that he suffered the residual effects of his injury for more than six months, and therefore dismissal of the claim is warranted (since no claim – Table or causation-in-fact – is tenable if severity cannot also be preponderantly demonstrated).

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.    Procedural History

On August 29, 2023, Respondent filed a Rule 4(c) Report opposing compensation. ECF No. 58. Specifically, Respondent argues that Petitioner cannot meet the severity requirement of the Vaccine Act, and that the medical records do not reflect onset of shoulder pain within 48 hours of vaccination or that he even received the subject vaccine. *Id.* at 6-9.[3] On April 15, 2024, Petitioner filed a Motion for a Ruling on the Record. Brief in Support of his Motion for Ruling on the Record as to Entitlement ("Mot."), ECF No. 68. Respondent opposed the motion on June 12, 2025, reiterating the arguments set forth in the Rule 4(c) Report. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 70. Petitioner filed a reply on November 4, 2024. Petitioner's Reply to Respondent's Response to Petitioner's Motion for Ruling on the Record ("Reply"), ECF No. 79. The matter is ripe for resolution.

## II.    Factual Background

Prior to the vaccination at issue, Petitioner reported right shoulder pain after a fall to orthopedist Dr. Guillem Gonzalez-Lomas on March 19, 2018, Ex. 13 at 149. He also reported leg pain in September 2018. Starting on October 29, 2018, Petitioner began attending physical therapy for right ankle issues related to a tendon sprain. Ex. 4 at 11.

Petitioner alleges he received the flu vaccine on November 5, 2018. Ex. 1 at 1; Ex. 9 at 1.[4] The day of vaccination, Petitioner attended physical therapy ("PT") for a previous right ankle injury. Ex. 11 at 2. There is no mention of shoulder pain from that PT visit.

Over three weeks later, on November 30, 2018, Petitioner saw physiatrist Dr. Craig Antell for left shoulder pain, restricted range of motion with "[n]o specific traumatic event however patient [did] correlate getting a shot prior to the onset of symptomatology." Ex. 13 at 120.[5] He also reported persistent neck pain, prior physical therapy with no

---

[3] Because severity is a dispositive issue in this case, I do not address herein the substance of Respondent's other objections.

[4] For proof of vaccination, Petitioner offers a one-page letter signed by a nurse, Christina Zayas, dated December 14, 2018. Ex. 1 at 1. The letter states that the petitioner was seen in "my office on 11/5/2018," and that he "received [a] flu shot on 11/5/2018." *Id.* The letter does not provide any details of the vaccination, however, nor does it indicate in which shoulder the vaccination was administered. *Id.* Another item of proof on this subject is a letter dated August 2, 2021, from Dr. Jason Dolinksy, also stating that Petitioner "was given an influenza vaccine… on 11/5/2018. There was no vaccine consent form given at that time," and "the nurse failed to document the location of the vaccine (but was the left arm according to our physical medicine doctor, Dr. Craig Antell)." Ex. 9 at 1.

[5] An email purported sent from Petitioner to Dr. Antell on November 29, 2018, requested that Petitioner be placed on the cancellation list and that he had "a very sore shoulder, potentially related to a flu vaccine." Ex. 5, Ex. 18 at 3.

improvement, and radicular pain. *Id.* Petitioner was diagnosed with left shoulder impingement and referred to PT. *Id.* at 122.

On December 3, 2018, Petitioner saw orthopedic surgeon Dr. Russell Warren for treatment of left shoulder pain. Ex. 25 at 3. Dr. Warren noted Petition had "a history of an injection a month ago," and that he "developed some soreness afterwards." *Id.* Further, Dr. Warren noted Petitioner had "pain at the infraspinatus" and recommended rehabilitation. Dr. Warren also thought "the flu shot implicated shoulder pain in the past." *Id.* Petitioner had a left shoulder x-ray on December 5, 2018, which was normal. Ex. 10 at 46. The history of his pain was listed as three weeks. *Id.*

Petitioner attended his fifth PT session for right ankle issues on December 12, 2018. Ex. 4 at 1. There is no mention of left shoulder pain at that time.

On December 14, 2018, Petitioner returned to Dr. Antell for evaluation of shoulder pain. Ex. 13 at 117. Dr. Antell noted that Petitioner had neck pain from a "whiplash type injury [in] July." *Id.* at 118. An examination showed reduced range of motion, and he was again assessed with impingement. *Id.* at 119.

Petitioner attended two PT sessions specific to his alleged shoulder injury in December 2018. The first was December 19, 2018, when he reported onset "after getting [the] flu shot … left upper arm on Nov. 5, 2018." Ex. 11 at 8. Petitioner also reported that Dr. Antell diagnosed him with left shoulder impingement, and Dr. Warren diagnosed him with rotator cuff tendinitis. *Id.*  He showed mild to severe range of motion deficits. *Id.* at 9, Ex. 4 at 20. The second session was on December 19, 2018, with similar evaluation. *Id.* at 15-16.

On December 27, 2018, Petitioner had an MRI of his left shoulder which showed an edema. Ex. 10 at 46. The impression included an "edema at the footprint …possibly from a direct injection into the humerus and the tendon footprint." *Id.* 47.

Petitioner returned to Dr. Warren on January 30, 2019. He now reported some improvement, but was still tender in the "back of the humeral head." Ex. 25 at 2. Dr. Warren noted Petitioner's "muscles fire appropriately", that he had "pretty good strength", and that they "are going to hold off on any steroid injection for now". *Id.* However, "[i]f there is no improvement over the next couple months, consider 1 more PRP" and to "recheck in 2 months consider injection at that time." *Id.*

Over a month later, Petitioner saw his primary care provider for anxiety on March 11, 2019. The record notes that he had left shoulder issues he developed "after flu

vaccination." Ex. 13 at 111-12. There is no evidence that an examination of Petitioner's left shoulder was preformed, or care provided.

There is a subsequent, five-month treatment gap, during which it does not appear Petitioner visited any medical providers. On August 12, 2019 Petitioner saw physiatrist Kristina Quirolgico for treatment of left foot pain. Ex. 10 at 4. Dr. Quirolgico noted that Petitioner has "been playing basketball and soccer" and had experienced sharp pain in his left medial sesamoid area. *Id.* This record contains no mention of shoulder pain.

The following month, Petitioner saw a cardiologist for multiple issues, including chest and foot pain (receiving an orthopedist referral for the latter). Ex. 2 at 1-4. But there is no reference to shoulder pain in this record. Three months later, Petitioner reported low back pain on December 26, 2019. Ex. 13 at 88. This record references chronic left shoulder pain due to vaccination (listed as March 11, 2019). *Id.* at 89.

On February 3, 2020, Petitioner saw Dr. Warren for a follow-up of prior treatment (presumably from the year before). Ex. 25 at 1. He reported improvement "with some concern" including mild discomfort. *Id.*

Petitioner did not again complain of shoulder pain to a treater until November 14, 2023 – more than three years later, and (notably) after this matter had been initiated – when he informed a treater that his pain had begun after receipt of a flu vaccine in November of 2018. Ex. 26 at 1-3; Ex. 29 at 81-83. His symptoms were deemed "largely consistent with subacromial impingement." Ex. 26 at 2; Ex. 29 at 82. Thereafter, and through January 2024, Petitioner was seen four times for various concerns, including right knee arthroscopy and podiatry issues. Ex. 29 at 105-06; 114-15; 125-26; 136-39. But there is no reference to shoulder pain during these visits.

Another MRI was performed on January 23, 2024. Ex. 27 at 2. The impression included no rotator cuff tear or labral tear and no bursal fluid in the subacromial or subdeltoid space. *Id.*

Petitioner has submitted an affidavit in support of his petition. Ex. 28. He stated that the vaccine was administered in his left arm on November 5, 2018. *Id.* at 1. Further, he obtained letters from Dr. Dolinsky and a nurse after learning there was no record of his vaccination. *Id.* Petitioner also stated that he followed up with Dr. Warren in January of 2019 and February of 2020 "which simply confirmed [his] problem." *Id.* Also, during the Pandemic Petitioner "continued with [his] home exercises…." *Id.*

4

### III.  Fact Findings and Ruling on Entitlement

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

In particular, a petitioner must establish that he suffered an injury meeting the Table criteria (*i.e.* a Table injury), in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. If a petitioner establishes a Table injury the burden shifts to respondent to establish a more likely alternative cause. Section 13(a)(1)(A), 11(c)(1)(C)(i), 14(a). If a petitioner cannot establish a Table injury, or he may pursue causation-in-fact under the legal standard set forth in *Althen v. Sec'y of Health & Hum. Servs.*, 418 F. 3d 1274, 1278 (Fed. Cir. 2005).

In addition to causation, a petitioner must also meet the requirements establishing that the vaccine received is "covered" by the Program, the duration and severity of petitioner's injury, and the lack of other award or settlement.[6] With regard to severity, a petitioner must show that she suffered the residual effects or complications of her injury or condition for more than six months after the administration of the vaccine. § 11(c)(1)(D)(i); *see Song v. Sec'y of Health & Hum. Servs.,* 31 Fed. Cl. 61, 65-66 (1994), aff'd, 41 F.3d 1520 (Fed. Cir. 2014) (noting that a petitioner must demonstrate the six-month severity requirement by a preponderance of the evidence). Finding that petitioner has met the severity requirement cannot be based on petitioner's word alone, though a special master need not base their finding solely on medical records. *Section 13(a)(1); see Colon v. Sec'y of Health & Hum. Servs.*, 156 Fed. Cl. 534, 541 (2021). Severity must be established regardless of whether the claim arises under the Table or is a causation-in-fact claim.

The parties dispute whether Petitioner has demonstrated that he suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i). Because Petitioner received the flu vaccine on November 5, 2018, he must demonstrate by preponderant evidence that his residual symptoms continued at

---

[6] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for his injury. *See* § 11(c)(1)(A)(B)(D)(E).

least through May 5, 2019. *See, e.g., Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's injury resolved less than two months after onset).

The record herein establishes that Petitioner's initial treatment through January 30, 2019. At that time, Petitioner reported some improvement but still tenderness at certain points. Ex. 25 at 2. There are no subsequent records regarding treatment of Petitioner's shoulder until February 2, 2020 – *over a year later* – establishing improvement but still some mild discomfort. Then, Petitioner further delayed, not seeking additional treatment until nearly *four years later*, on November 14, 2023. Ex. 26 at 1-3; Ex. 29 at 81-83. There are references to shoulder pain in March and December of 2019, but no evidence of an examination or treatment. Ex. 13 at 59-61; 88-89; 111-12.

During this period, Petitioner attended other appointments for various medical concerns. Between March 11 and December 26, 2019, Petitioner sought care for left foot pain, chest pain, and low back pain on three separate occasions in 2019. Ex. 10 at 4 (record from August 12, 2019 seeking care for foot pain); Ex. 2 at 1-4 (record from September 10, 2019 referencing chest pain and other concerns); Ex. 13 at 88-89 (record from December 26, 2019 for addressing low back pain). Further, during the second, longer gap, Petitioner was seen four times for various concerns, including right knee arthroscopy and podiatry issues. Ex. 29 at 105-06; 114-15; 125-26; 136-39. This establishes that Petitioner did have the wherewithal to seek treatment when needed. Petitioner's failure to also address shoulder pain during this period, specifically in 2019, underscores the likelihood his condition had not persisted throughout this time.

Petitioner has offered explanations for his treatment cessation. He maintains in particular that during the Pandemic he "continued with [his] home exercises…." Ex. 28. This is entitled to some weight, but not when coupled with so many significant treatment gaps (which began a year before the Pandemic closed down many avenues for non-emergency medical treatment as of March 2020). Those gaps ultimately support the conclusion that Petitioner's initial shoulder pain had resolved, and that any number of possible intervening events might better explain his reported pain recurrence. Thus, the overall totality of evidence preponderates against a favorable severity finding.

### Conclusion

Because Petitioner has failed to meet the severity requirement set forth in Section 11(c)(1)(D)(i), Petitioner cannot establish entitlement, and therefore I must **DISMISS**

her claim in its entirety. In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk of Court shall enter judgment in accord with this Decision.[7]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.